UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION


JAMES ARTHUR ROSS,

        Plaintiff,

    v.

STEVEN SHELTON, M.D., et al,

        Defendants.

Case No. 2:18-cv-00045-YY

OPINION AND ORDER

YOU, Magistrate Judge:

*Pro se* plaintiff James Arthur Ross ("Ross") is an inmate housed at Two Rivers Correctional Institution ("TRCI") in Umatilla, Oregon. He brings a civil rights action pursuant to 42 U.S.C. § 1983 against defendants Dr. Steven Shelton, M.D., medical director at the Oregon Department of Corrections ("ODOC"), J. Dafoe, health services administrator at ODOC, and three TRCI nurses, B. Whelan, Shannon Johnston, and M. Whelan. Ross' allegations stem from medical care he has received for a knee injury. He alleges that defendants violated his rights "to be free from retaliation, to medical treatment, to be free from cruel and unusual punishment, equal protection and due process and the [Americans with Disabilities Act] ADA, as guaranteed . . . through the Oregon Constitution, Article I, . . . and the United States Constitution[,] Amendments 1st, 8th, and 14th[.]" Compl. 2, ECF #2. Ross seeks 1) an MRI of his knees, ankles, and shoulder; 2) discontinuation of the policy of placing inmates on sports restrictions

1—OPINION AND ORDER

and subjecting them to disciplinary sanctions for noncompliance; 3) discontinuation of the practice of administering x-rays for injuries that should be detected through other means, such as MRIs; and 4) monetary relief in the amount of $127,569.23. *Id.* at 6.

Defendants collectively seek summary judgment (ECF # 31) on all of Ross' claims. For the reasons discussed below, defendants' motion for summary judgment is GRANTED.[1]

I.  **Summary Judgment Standard**

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law." The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial." *Id.* at 324 (citing FRCP 56(e)).

The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-movant's favor. *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1111 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 2217 (2017). Although "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine

---

[1] All parties have consented to allow a magistrate judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

*Pro se* complaints are "to be liberally construed." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). "This rule protects the rights of pro se litigants to self-representation and meaningful access to the courts, . . . and is particularly important in civil rights cases." *Pouncil v. Tilton*, 704 F.3d 568, 574–75 (9th Cir. 2012) (citations and quotation marks omitted).

## II.  Eighth Amendment

### A.  Background Facts

On July 6, 2012, Ross saw a medical provider for right knee pain after being involved in an altercation. Decl. Digiulio, ¶ 7. This was Ross' first complaint of knee pain since his admission to ODOC in 2004. *Id.* Three days later, on July 9, 2012, Ross received two x-rays of his right knee. *Id.* The findings were "negative" and showed "no [b]ony, articular or soft tissue abnormality." *Id.* ¶ 8.

On July 8, 2013, Ross complained of right knee pain, which he has been experiencing since childhood. ECF #32, at 20. He reported that his knee went in and out of socket, and that it was out of socket again. *Id.* He described constant pain, rated at a score of six on a scale of one to ten, and asked for the knee to be popped back into place. *Id.* After reviewing the July 9, 2012 x-ray, which showed no significance, medical staff instructed Ross to rest and take ibuprofen for pain, and he was given a sports restriction[2] for two weeks. *Id.*

On July 17, 2014, Ross was playing basketball when he was struck below the left knee. *Id.* at 24-25. He complained of pain radiating to his toes, a swollen knee, and "popping." *Id.*

---

[2] Ross describes a sports restriction as a limitation on every physical activity except for walking. Resp. 5.

Ross reported that he landed on the side of his ankle and heard a "pop." ECF #32, at 11. Ross was x-rayed the same day, and the results were again normal. Digiulio Decl. ¶ 9. He was told to rest, ice, elevate, and take ibuprofen, and he was given crutches with an Ace bandage wrap. ECF #32, at 12.

Approximately one month later, on August 20, 2014, Ross complained about ongoing knee pain and was told to return to sick call if the problem persisted. *Id.* He returned on August 30, 2014, complaining again of knee pain. *Id.*

On January 8, 2016, Ross reported to sick call with complaints of pain in the left knee in the patella region (left kneecap). *Id.* ¶ 11. He reported a history of left knee trauma from playing basketball, and was experiencing pain and stiffness that woke him during the night and had worsened over the past six to eight months. Ross reported that ibuprofen was no longer effective. Ross was placed on a sports restriction for three months. *Id.*

Three days later, Ross received an x-ray of his left knee. *Id.* The findings were "normal." *Id.* The articular surfaces were smooth and joint spaces appeared normal. *Id.* No acute or chronic feature was seen, and the patella was aligned and intact. *Id.*

On January 29, 2016, Ross sent an inmate communications form to the medical department complaining about lack of treatment for his knee. Compl., Ex. 3. Three days later, on February 3, 2016, he was advised that his "x-ray was normal so most likely it is soft tissue injury and it takes time for soft tissue injuries to resolve[.] [R]esting your leg and taking anti-inflammatories as directed is the right treatment." *Id.*

On February 4, 2016, Ross filed a grievance, complaining that the sports restriction was punitive. He stated that he had heart problems and needed exercise on a regular basis, and that there were plenty of exercises he could perform without hurting his knee. *Id.*, Ex. 5. On March

14, 2016, defendant Shannon Johnston, an RN Nurse Manager, responded to the grievance, noting that x-ray results showed a normal left knee and that a "sports restriction would assist in the healing of [his] chronic knee injury." *Id.*, Ex. 6. Ross appealed his grievance on March 21, 2016. *Id.*, Ex. 7. In his appeal, he expressed concern that "medical would retaliate against me by putting [the] same restriction on me." *Id.*

On May 3, 2016, Dr. Shelton wrote Ross a letter addressing his grievance form. *Id.*, Ex. 8. Dr. Shelton told Ross explained that "[t]he type of knee pain [he] experienced is appropriately treated with rest and nonsteroidal anti-inflammatory drugs (NSAIDs) which includes ibuprofen, Naxproxen, and aspirin" and that "[t]he restriction from sports was intended to avoid further injury to [his] knee and allow it time to heal." *Id.* Dr. Shelton invited Ross to "send an Inmate Communication or visit sick call to discuss the treatment plan based on the progression of [his] knee symptoms" and that "Health Services is committed to providing care that is respectful, compassionate, objective and non-judgmental." *Id.*

On May 11, 2016, Ross filed another grievance appeal form. *Id.*, Ex. 9. Ross stated that "nothing in Dr. Shelton's response justifies the actions taken by 'medical' on me, which did not provide me (in my opinion) proper medical treatment, but only punished me for seeking it." *Id.* On June 27, 2016, defendant J. DaFoe, an ODOC Health Services Administrator, wrote Ross and stated, "I see that your knee pain is something that you have been dealing with for quite some time . . . ." *Id.*, Ex. 10. DaFoe reiterated that a "sports restriction is intended to avoid further injury to your knee and allow it to heal" and "ensures . . . that you are avoiding the activities that can worsen your symptoms." *Id.* DaFoe explained that "[t]his is a standard treatment/protocol for patients complaining of joint/extremity pain/discomfort" and "not intended to be a 'punishment' by any means." *Id.*

5—OPINION AND ORDER

Ross has not reported any knee pain since, although he has complained on different occasions about the flu, a rash, and a sore on his third right toe. Digiulio Decl. ¶ 14; ECF #32, at 46, 47. According to Dr. Christopher Digiulio, a physician and deputy medical director with ODOC, the medical care that Ross has received for knee pain was appropriate and well within the community standards. Digiulio Decl. ¶¶ 5, 14.

**B.    Relevant Law**

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Suchodolski v. Peters*, No. 1:17-cv-01113-AC, 2018 WL 4926300, at *9 (D. Or. Oct. 10, 2018) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Punishment must comport with "the evolving standards of decency that mark the progress of a maturing society." *Id.* (quoting *Estelle*, 429 U.S. at 102).

"[T]o state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 106. "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.*

A prison official is deliberately indifferent if the official knows that a prisoner faces substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847. To succeed on a deliberate indifference claim based on inadequate medical care, a plaintiff must show (1) he suffered an objectively serious illness or

injury while incarcerated, and (2) prison officials were subjectively aware of the plaintiff's serious condition, but nonetheless delayed or denied access to adequate medical care. *Suchodolski*, 2018 WL 4926300, at *10 (internal citations omitted). "Thus, to violate the Eighth Amendment, a prison official must have a 'sufficiently culpable mind.'" *Guy v. Kimbrell*, No. CIVS03-1208-JAM-CMKP, 2008 WL 2774184, at *3 (E.D. Cal. June 27, 2008), report and recommendation adopted, 2008 WL 3200855 (E.D. Cal. Aug. 7, 2008) (quoting *Farmer*, 511 U.S. at 834).

"A serious medical need exists if failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Brown v. Perez*, No. EDCV 14-2421-CJC JEM, 2015 WL 2153451, at *3 (C.D. Cal. May 7, 2015) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)). Examples of serious medical needs include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059–60.

"However, an inadvertent or negligent failure to provide medical care does not constitute deliberate indifference." *Brown*, 2015 WL 2153451, at *4 (citing *Estelle*, 429 U.S. at 105–06). "When medical treatment is delayed rather than denied, the delay generally amounts to deliberate indifference only if it caused further harm." *Id.* (citing *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990); *Hunt v. Dental Dept.*, 865 F.2d 198, 200 (9th Cir. 1989); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985); *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (delayed dental care did not violate Eighth Amendment because

plaintiffs did not show that "delays occurred to patients with problems so severe that delays would cause significant harm")).

A "difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference." *Id.* (citation and quotations omitted). "[N]or does a dispute between a prisoner and prison official over the necessity for or extent of medical treatment amount to a constitutional violation." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).

C.  **Analysis**

There is no evidence that Ross' knee injury is objectively serious under the Eighth Amendment. Multiple x-rays produced negative and normal results, and showed no bony, articular, or soft tissue abnormality. The articular surfaces were smooth and joint spaces appeared normal, there were no acute or chronic features, and the knee cap was aligned and intact. The objective medical evidence does not show this was a condition that "significantly affect[ed] [Ross'] daily activities" and does not corroborate Ross' accounts of "substantial pain." *McGuckin*, 974 F.2d at 1059-60. Instead, Ross has been diagnosed with a soft tissue injury and repeatedly told to rest. This was not an injury "that a reasonable doctor or patient would find important and worthy of comment or treatment" or refer to a specialist, as Ross contends. *Id.*

Moreover, there is no evidence that defendants were subjectively aware of Ross' serious condition, yet nonetheless delayed or denied access to adequate medical care. Each time, after reporting his injuries, Ross has been immediately x-rayed and given prompt medical advice. One time he received crutches and an Ace bandage. Similarly, his grievances have been responded to in a timely manner, and he has been invited to send further inmate communications or visit sick call to discuss his treatment plan and progression of his symptoms. According to Dr.

Digiulio, who is a physician, the medical care that Ross received was appropriate and well within the community standards.

At most, Ross has an argument that defendants were negligent in treating his injury. Ross maintains that he needs to be seen by a specialist and receive an MRI. Resp. 2, ECF #38. However, negligence or a difference of opinion is not enough to establish deliberate indifference. Nor has Ross shown that any delay in treating him has caused further harm. Medical records show that Ross has not been seen for his knee injury since early 2016, although he has complained of other injuries. Ross claims that he has not returned to sick call about his knee because he experiences "no difference," so "why . . . go back . . . to be punished again and still receive no treatment?" Resp. 6. Again, however, his difference of opinion regarding what medical treatment is appropriate for his injury does not establish a claim of deliberate indifference. Because defendants are entitled to prevail on plaintiff's Eighth Amendment claim as a matter of law, their motion for summary judgment on this claim is granted.

## III. Retaliation—First Amendment

Ross contends that his "right to be free" from retaliation under the First Amendment has been violated. Compl. 4. Prisoners have a First Amendment right to file prison grievances. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (internal citations omitted). Retaliation against prisoners for exercising this right violates the First Amendment and is a matter of clearly established law. *Id.*

To prevail on this claim, a prisoner must establish that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline. *Barnett v. Centoni,* 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). The prisoner must establish: "(1) [a]n assertion

that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Brodheim*, 584 F.3d at 1269 (citing *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005)).

The prisoner bears the burden of establishing that the actions he complains of have no legitimate penological purpose. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Generally, courts avoid "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" *Id.* at 807 (citation omitted). Courts should "'afford appropriate deference and flexibility to state officials trying to manage a volatile environment,' especially with regard to 'the fine-tuning of the ordinary incidents of prison life, a common subject of prisoner claims[.]'" *Id*. Furthermore "the nature of a retaliation claim requires that it be 'regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.'" *Banks v. Oregon,* No. 2:12-cv-01651-MC, 2014 WL 1946552, *3 (D. Or. May 12, 2014) (quoting *Adams v. Rice,* 40 F.3d 72, 74 (4th Cir. 1994)).

Ross alleges that prison officials took adverse action against him by imposing a temporary sports restriction when he sought treatment for his knee injury. However, Ross has failed to establish that any adverse action has taken place. Rather, Ross received the standard treatment and protocol for patients complaining of joint/extremity pain and discomfort, which is to rest and take anti-inflammatories. Moreover, even if Ross was able to show that an adverse action took place, he is unable to demonstrate that the action did not reasonably serve a legitimate correctional goal, such as minimizing inmate injury. Because defendants have

established that they are entitled to judgment as a matter of law, summary judgment is granted as to this claim.

IV. **Equal Protection**

Ross claims that other inmates with similar injuries "receive the very treatment [he] ha[s] been requesting for years." Resp. 7. He contends that this "unequal treatment" is unconstitutional under the Fourteenth Amendment. *Id.*; Compl. 4.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall deny to any person the equal protection of the laws, "which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "When an equal protection claim is premised on unique treatment rather than a classification, the Supreme Court has described it as a 'class of one' claim." *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). To establish a violation of equal protection in a "class of one" case, a plaintiff must establish that the defendants "intentionally, and without rational basis, treated the plaintiff differently from others similarly situated." *Id.* (internal citations omitted). However, a person cannot state an equal protection claim merely by dividing all persons not injured into one class and alleging that they received better treatment than the plaintiff did. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005). Instead, to state a "class of one" claim, the plaintiff must identify the group of individuals with whom he is similarly situated, identify the allegedly intentional and disparate treatment, and allege that there was no rational basis for the different treatment. *Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011).

Ross has failed to allege a colorable equal protection claim. As Dr. Digiulio explained, the treatment that Ross has been receiving is appropriate for his injury and within community standards. Thus, even assuming that other inmates with similar injuries are receiving unnecessary MRIs, Ross cannot show there is no rational basis for the different treatment he has received, as it is the appropriate treatment for his condition.

## V.      Due Process

It appears that Ross claims a loss of liberty interest as a result of being placed on a sports restriction. Due process protection attaches only to instances that are an atypical and significant hardship on the inmate compared to the ordinary incidents of prison life. *Brown v. Oregon Department of Corrections*, 751 F.3d 983, 987 (9th Cir. 2014) (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)). Moreover, the Fourteenth Amendment requires only "some evidence" to support a decision by prison officials that results in the loss of a liberty interest. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). The "some evidence" standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence." *Id.* "[T]he relevant question is whether there is any evidence in the record that could support the conclusion." *Id.* at 455-56.

Here, the record does not point to any evidence that the sports restriction placed on Ross was an atypical and significant hardship. Rather, it was "intended to avoid further injury" to Ross' knee and to allow it to heal. The diagnosis and treatment that Ross received, which was appropriate and within community standards, constitutes "some evidence" to support the purported loss of liberty interest, i.e., the sports restriction. Thus, Ross' due process claim fails.

## VI. ADA Claim

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. To prove a Title II claim, plaintiff must demonstrate that (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). A disability is defined as "a physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2)(A).

Title II of the ADA "unmistakably includes State prisons and prisoners within its coverage." *Pennsylvania Dept. of Corrs. v. Yeskey*, 524 U.S. 206, 210 (1998). "Further, medical care is one of the 'services, programs, or activities' covered by the ADA." *Payne v. Arizona*, No. CV 09-01195-PHX-NVW, 2012 WL 1151957, at *3 (D. Ariz. Apr. 5, 2012) (citing *Kiman v. N.H. Dept. of Corrs.*, 451 F.3d 274, 284 (1st Cir. 2006)). The "alleged deliberate refusal of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as . . . medical care . . . constitutes exclusion from participation in or . . . denial of the benefits of the prison's services, programs, or activities." *United States v. Georgia*, 546 U.S. 151, 157 (2006).

However, "[w]hile evidence of discriminatory medical care can constitute a claim under the ADA, claims based solely on provision of inadequate or negligent medical care are not cognizable under the ADA." *Payne*, 2012 WL 1151957, at *4 (citing *Simmons v. Navajo Cnty.,*

*Ariz.*, 609 F.3d 1011, 1021–22 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1997) ("The ADA does not create a remedy for medical malpractice."); *Marlor v. Madison Cty., Idaho*, 50 F. App'x 872, 873 (9th Cir.2002) ("Inadequate medical care does not provide a basis for an ADA claim unless medical services are withheld by reason of a disability.")).

Additionally, "[t]o recover monetary damages under Title II of the ADA . . . a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). Intentional discrimination is established by showing the defendant acted with "deliberate indifference." *Id*. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id*. at 1139. A plaintiff must "identify 'specific reasonable' and 'necessary' accommodations that the [defendant] failed to provide" and show the defendant's failure to act was "a result of conduct that is more than negligent, and involves an element of deliberateness." *Id*. at 1140.

Here, Ross makes only fleeting reference to the ADA in his Complaint and provides no further explanation of his claim in his response to the motion for summary judgment. Compl. 5, ECF #2. Even assuming Ross has a disability under the ADA, he has failed to establish that defendants acted with the requisite discriminatory intent, or deliberate indifference. As discussed above, there is no evidence that defendants' actions were anything more than negligent, if that.

## VII. State Constitutional Claims—Eleventh Amendment

Ross asserts that his rights under the Oregon Constitution, Article 1, have been violated but fails to refer to a specific section. Nevertheless, Ross' claims are barred by the Eleventh Amendment.

Defendants contend that the State of Oregon must be substituted for the individual defendants and thereafter dismissed under the Eleventh Amendment. Mot. Summ. J. 7, ECF #22. In support of their argument, defendants cite to ORS 30.265(1), which they contend provides that the "sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties . . . shall be an action against the public body only." *Id.*

Defendants incorrectly cite to an old version of ORS 30.265(1).[3] The current, relevant statutory scheme is codified in ORS 30.265(2) through (4).

In any event, even though "[t]he Oregon Tort Claims Act is a waiver of sovereign immunity[,]" it "does not waive Eleventh Amendment immunity." *Estate of Pond v. Oregon*, 322 F. Supp. 2d 1161, 1165 (D. Or. 2004); *see also Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 99 n. 9 (1984) ("a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts"). The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

---

[3] In 1991, the Oregon legislature added the following language to *former* ORS 30.265(1): "The sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 shall be an action against the public body only." *Berry v. State, Dep't of Gen. Servs.*, 141 Or. App. 225, 227 (1996). However, the statute has since been amended.

15—OPINION AND ORDER

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. Under the Eleventh Amendment, federal courts may not entertain lawsuits brought by citizens against a state without the state's express consent. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996). "The test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985). The court "will find waiver only where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction"). *Edelman v. Jordan*, 415 U.S. 651, 673 (1974). The OTCA contains no such express consent to file suit against the state in federal court. *Estate of Pond*, 322 F. Supp. 2d at 1165.

Moreover, it is apparent from the evidence that the individual defendants in this case were acting in their official capacities. "When a plaintiff brings a lawsuit against a government officer in his official capacity, a court treats the suit 'as a suit against the entity' that employs the officer." *Updike v. Clackamas Cty.*, No. 3:15-CV-00723-SI, 2015 WL 7722410, at *3 (D. Or. Nov. 30, 2015) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). The individual defendants in this case are employees of ODOC and TRCI. TRCI is part of the Oregon Department of Corrections, which is an arm of the State of Oregon. *See Gauthier v. E. Oregon Corr. Inst.*, No. CV 04-290-HA, 2004 WL 2260670, at *4 (D. Or. Oct. 7, 2004) (finding Eastern Oregon Correctional Institution is a part of the ODOC, which is an "arm of the State or Oregon"). Thus, the suit must be treated as one against the State of Oregon, and the state constitutional claims must be dismissed under the Eleventh Amendment.

## VIII. Qualified Immunity

Defendants contend that they are entitled to qualified immunity from damages. Mot. Summ. J. 11, ECF #31. It is unnecessary to decide that issue, as the motion for summary judgment is otherwise denied on the merits.

## IX. Injunctive Relief

Ross seeks an end to the "policy of placing inmates on restrictions, which subject them to disciplinary punishment or outright denial of treatment" and an end to "giving x-rays for things that obviously need MRIs." Compl. 6. Defendants argue that, even if Ross is entitled to prevail on his claims, this form of relief is unavailable because the Prison Litigation Reform Act ("PLRA") contains a restriction on prospective injunctive relief. Mot. Summ. J. 12, ECF #31 (citing 18 U.S.C. § 3626(a)(1)(A)).

Indeed, under the PLRA, courts "shall not grant or approve any prospective relief unless the court finds such relief is narrowly drawn . . . ." 18 U.S.C. § 3626(a)(1)(A). The PLRA "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

Demanding an end to "giving x-rays for things that obviously need MRIs" and an end to punitive "inmate restrictions" does not constitute injunctive relief that is narrowly drawn. Furthermore, the relief sought by Ross is not the least "intrusive" means necessary to correct the alleged violations, which pertain to Ross' knee injury. Thus, even if Ross was entitled to relief on his claims, his request for prospective injunction fails for these reasons.

## CONCLUSION

Defendants' Motion for Summary Judgment (ECF #31) is GRANTED in its entirety and this action is dismissed with prejudice. The court further certifies that any appeal from the order or judgment dismissing this case would be frivolous and not taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

IT IS SO ORDERED.

DATED February 21, 2019.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge